UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:03CV479

| | |
|---|---|
| DAVIDSON COTTON MEXICO, S. DER. L. DE C.V., <br>         Plaintiff, <br> v. <br><br> TEKMATEX, INC., <br>         Defendant. | ORDER AND MEMORANDUM |

In this civil action for monetary relief, Plaintiff Davidson Cotton, the buyer, contends that Defendant Tekmatex, Inc., the seller, breached the parties' contract for sale of textile looms and other equipment, breached its implied duty of good faith, and unjustly enriched itself. The plaintiff's claims arise out of the defendant's failure to return a down-payment after the plaintiff attempted to cancel its sales contract. Jurisdiction is present. 28 U.S.C. § 1332(a).

This matter is presently before the Court upon the defendant's Motion to Dismiss pursuant to Rule 12(b)(6) as to all claims, which the Court grants in part and denies in part. Because the Court finds the plaintiff has stated a claim in respect to breach of contract upon which relief may be granted, the defendant's motion to dismiss that claim is denied. The Court, however, finds that the plaintiff fails to state a claim for either Breach of the Covenant of Good Faith and Fair Dealing or for Unjust Enrichment, and therefore it will grant the defendant's motion as to those claims. The reasons for the Court's decision follow, beginning with the following facts taken from the Complaint and assumed to be true.
.

BACKGROUND

On October 23, 2000, Davidson Cotton, entered into a sales contract with Tekmatex, Inc., whereby Davidson agreed to purchase forty-eight textile looms and ancillary equipment and services for a total price of $4,562,538. Pursuant to the terms of the sales contract, Davidson made a down payment to Tekmatex in the amount of $1,280,153.25. In July 2001, Davidson wrote a letter to Tekmatex indicating that it was canceling the sales contract because it had been unable to secure sufficient financing to proceed with its facility in Mexico. Davison acknowledged that Tekmatex had delivered two training looms, invoiced at a value of $190,525.00, and requested a refund of the balance of the down payment in the amount of $1,090,878.25. Davidson also requested details of any applicable design-specific expenses allocable to the delivered looms so that those expenses could be deducted from the amount of the refund requested. Tekmatex responded by letter three weeks later, asserting unequivocally that, under the terms of the contract, the down payment was non-refundable. Tekmatex urged Davidson to retract what it characterized as Davidson's repudiation of the contract and urged Davidson to perform its obligations under the contract. Davidson responded a week later by letter, again requesting a refund of the balance of the down payment, and requested documentation supporting costs and expenses incurred by Tekmatex relating to obtaining and processing the contract, special design and engineering services, or costs of machinery and components already manufactured that could not be reasonably reused in an alternative manner. This second letter indicated that once an agreement had been reached on the amount of those charges for which it was requesting documentation, those charges could be deducted from the amount of the refund requested. On November 7, 2001, Tekmatex responded by letter, stating Davidson was in breach of the contract, and maintained that the damages it incurred due to Davidson's breach

2

exceeded the amount of the down payment. Tekmatex refused to return any portion of the down payment. Davidson subsequently filed the instant suit.

ANALYSIS

In deciding a motion to dismiss for failure to state a claim, the Court must construe the complaint liberally in favor of the plaintiff, taking as true all well-pleaded factual allegations and all reasonable inferences which may be drawn therefrom. Loe v. Armistead, 582 F.2d 1291, 1292 (4th Cir. 1978). A motion to dismiss should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Loe, 582 F.2d at 1295 (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

The plaintiff's Complaint contains three counts. The first count alleges that the defendant's failure to return the balance of the down payment amounts to a breach of contract. The second count alleges the defendant breached its implied duty of good faith and fair dealing by intentionally attempting to avoid its legitimate obligations under the contract. The third count alleges that defendant's failure to return the down payment amounts to unjust enrichment. These claims are governed by the Uniform Commercial Code, as adopted by North Carolina. See N.C.G.S. § 25-2-708. The contract itself specifies the governing law. The defendant now moves to dismiss all three counts pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

1. The Breach of Contract Claim

To state a claim for breach of contract under North Carolina law, the plaintiff must allege: (1) the existence of a valid contract and (2) breach of that contract. IWTMM, Inc. v. Forest Hills Rest Home, 577 S.E. 2d 175 (N.C. Ct. App. 2003) (quotation and citation omitted) (interpreting contract

for the sale of pharmaceutical drugs governed by the North Carolina Uniform Commercial Code). Neither party disputes that the Sales Contract is a valid contract, or that the defendant has not refunded the down payment. The issue is whether the plaintiff has sufficiently alleged that the defendant breached the contract with respect to the defendant's handling of the down payment. The plaintiff alleges that the defendant's failure to refund the down payment was itself a breach of the contract. In response, the defendant contends that it did not breach the Sales Contract because the contract did not provide for the return of the down payment in the event of the plaintiff's cancellation of the contract.

The Sales Contract, which was drafted by the defendant, contains two provisions that are applicable to the failure of the plaintiff to follow through with purchase of the looms. The first, in a section entitled "Seller's Rights Upon Default," provides an acceleration clause and specifies the source of rights and remedies upon default:

> Upon default by Buyer, or at any time thereafter, Seller at its option may declare the entire unpaid balance of the purchase price hereunder along with any other sums owed hereunder, immediately due and payable and shall have all the rights and remedies available under the Uniform Commercial Code . . . .

See Sales Contract, p.2, attached as Exhibit A to the Complaint.

The second, in a section entitled "Additional Terms," provides that:

> In the event of Buyer's cancellation of this agreement prior to delivery for any reason, Buyer shall pay at least the following stipulated damages which shall include, but are not limited to, all costs and expenses incurred by Seller in obtaining and processing the contract, any special engineering costs and commitments entered into by Seller prior to the time of cancellation, and the cost of any machinery, or parts thereof, already manufactured which seller cannot reasonable [sic] use to fill other firm orders in hand at the time of cancellation.

Id.

Thus, the Sales Contract provides that under the default provision, if the plaintiff-buyer were to default, the defendant-seller would have all rights and remedies available to it as provided by the Uniform Commercial Code. Instances of "default" are defined to include the refusal or failure by the plaintiff to pay the entire balance due under the Sales Contract. The Sales Contract further provides in the event of cancellation by the plaintiff prior to delivery of the looms "for any reason," the defendant is entitled to recover at least all costs incurred in its performance of the contract to date that cannot be reasonably recovered by resale to other customers with then-current orders. The Sales Contract does not specifically characterize the down payment as "refundable" or "non-refundable," and there is no express provision for the down payment to be refunded in the event of the plaintiff's default or cancellation.

Because the Sales Contract is a contract for the sale of goods, its interpretation is governed by the Uniform Commercial Code as adopted by North Carolina ("UCC"). See N.C.G.S. § 25-2-101 et seq. The parties stipulate to the application of North Carolina law.[1]

---

[1]This Court notes that when this case was pending before the late Judge H. Brent McKnight, this motion was referred to Magistrate Judge Keesler for a recommended disposition. Magistrate Judge Keesler specifically invited supplemental briefing on the impact of these UCC provisions on the claims at issue. In response, rather than arguing that Defendant's actions violated these UCC provisions and moving to amend the Complaint to add an appropriate claim, the plaintiff maintained that its claim for breach of contract was appropriate and that these UCC provisions only defined the measure of damages for the breach.

Section 2-718 of the North Carolina Uniform Commercial Code provides, in relevant part, that:

> (1) Damages for breach of either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of the proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy ....
>
> (2) Where the seller justifiably withholds delivery of goods because of the buyer's breach, the buyer is entitled to restitution of any amount by which the sum of his payments exceeds
>
>> (a) the amount to which the seller is entitled by virtue of terms liquidating the seller's damages in accordance with subsection (1),

The plaintiff-buyer asserts it has paid a down payment under a contract for sale of goods – some 48 machines – and has filed a Complaint to get at least part of the down payment back. Prior to filing suit, the plaintiff stated, in its "cancellation" of the contract letter, its clear determination not to perform the balance of its obligations under the contract. § 25-2-611. The defendant had partially performed by delivering two of the machines, which the plaintiff accepted. In simplest terms, the plaintiff alleges it paid one fourth of the contract price for goods, but received only two of the promised forty-eight machines in return. These facts state a claim for money had and received, or at least for an accounting for such money.

The defendant responds that the plaintiff has pled itself out of court by showing that the plaintiff as buyer committed an anticipatory repudiation of the sales contract, entitling the defendant as seller to full performance by plaintiff in an amount that exceeds any obligation of the defendant to account for the down-payment it received. The defendant, however, did not move for judgment on the pleadings. A motion to dismiss for failure to state a claim, which considers the facts only in the light most favorable to the plaintiff, tests only the sufficiency of those facts to support a claim against the defendant. The offset language of the cancellation provision of the contract suggests that

---

(b) in the absence of such terms, twenty per cent (20%) of the value of the total performance for which the buyer is obligated under the contract or five hundred dollars ($500.00), whichever is smaller ....

(3) The buyer's right to restitution under subsection (2) is subject to offset to the extent that the seller establishes

(a) a right to recover damages under the provisions of this article other than subsection (1), and

(b) the amount or value of any benefits received by the buyer directly or indirectly by reason of the contract ....

See N.C.G.S. §25-2-718.

there may be unresolved obligations of the defendant toward the plaintiff with respect to the down payment now in the hands of defendant. An action may be maintained by the plaintiff to enforce those obligations, in the nature of an action for breach of contract. Moreover, to determine if a claim for breach has been stated, one notes at the outset that the UCC recognizes cancellation as a remedy not for a buyer who does an anticipatory repudiation of a contract, but for one who does a rightful rejection of goods or a justifiable revocation of acceptance. See §§ 25-2-711 and 25-2-106(4). Such a wronged buyer certainly would have a claim to pursue on the contract. Under the facts alleged in the complaint, the plaintiff-buyer cannot claim to have been wronged in either sense. Under the terms of the contract in this case, however, the parties have elevated the buyer to claimant status in circumstances where cancellation occurs "for any reason," not just the ones recognized by the statute. The "cancellation provision" specifies that should the buyer cancel the contract for any reason, the buyer, will pay "at least the following stipulated damages . . ." including, *inter alia*, certain costs incurred by the seller. The items of damage mentioned are explicitly non-exclusive, thus opening the door for assessment of other items of damage, and defeating the plaintiff's contention that the defendant's obligation to return the down payment is absolute. This provision further contemplates the possibility of cancellation by the buyer before complete performance by the seller, and does so without imposing a normative disapprobation of the actions of the cancelling party. To that extent, the clause modifies the definition of "cancellation" found in § 25-2-106(4). A claim to enforce the rights of a cancelling party under these circumstances is therefore implicitly acknowledged by the contract itself. Such a claim has been stated. The cancellation provision further may be said to recognize that cancellation amounts to a breach by the buyer, by specifying minimum stipulated damages to which the seller would be entitled. Cancellation in this context is equivalent to

anticipatory repudiation by the buyer. In this case, the plaintiff buyer is admitting a controversy arguably entailing its own breach, invoking the contract's terms to limit the damages to which seller is entitled, and seeking the Court's aid to enforce a return of that portion of its down payment to which it may be entitled. This approach is akin to an action for declaratory judgment, where a party implies a potential liability of its own under a contract, alleges wrongful conduct on the part of the other side, and asks the court to adjudicate relative rights and damages. A claim in this vein has been stated.

For the foregoing reasons, the plaintiff has stated a claim in respect to breach of contract upon which relief may be granted, and the defendant's motion to dismiss the claim for breach of contract will be denied.

### 2. The Good Faith and Fair Dealing Claim

The plaintiff contends that the defendant breached the UCC's covenant of good faith and fair dealing (N.C.G.S. § 25-1-203 (1965)) by failing to comply with the terms of the cancellation provision of the contract or, more specifically, by failing to provide documentation and refund the down payment subject to certain offsets. The defendant contends that this claim should be dismissed for failure to state a claim upon which relief can be granted. For the following reason, this Court agrees with the defendant.

The defendant's obligation of good faith and fair dealing with respect to the cancellation provision does not create an affirmative duty on the part of the defendant that can be enforced in isolation from the rights and duties of both parties arising within the four corners of the contract. That clause does not state an absolute obligation but a qualified one. The clause specifies the damages to be paid will be "at least" certain amounts that "include, but are not limited to," various

items of damage. These words necessarily refer one to calculations of the obligation to be derived from provisions found elsewhere in the contract.

Enforcement of the whole contract involves a claim for relief such as has been recognized in paragraph 1 above, but not one that may be maintained separately. This alleged claim is a matter of discovery and calculation of damages, not statement of a claim. For that reason, as to the claim for breach of covenant of good faith and fair dealing, the motion to dismiss will be granted.

### 3. The Unjust Enrichment Claim

The defendant lastly contends that the plaintiff's unjust enrichment claim should likewise be dismissed for failure to state a claim upon which relief can be granted. The North Carolina Supreme Court has summarized the elements of an unjust enrichment claim as follows:

> In order to establish a claim for unjust enrichment, a party must have conferred a benefit on the other party. The benefit must not have been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances. The benefit must not be gratuitous and it must be measurable.

Booe v. Shadrick, 369 S.E. 2d 554, 556 (N.C. 1988). Elaborating upon this point, the Booe Court stated that:

> [a] claim of this type is neither in tort nor contract but is described as a claim in quasi-contract or a contract implied in law. A quasi-contract or a contract implied in law is not a contract. The claim is not based on a promise but is imposed by law to prevent an unjust enrichment. If there is a contract between the parties the contract governs the claim and the law will not imply a contract.

Id.

In this count, rather than seek to enforce the Sales Contract, the plaintiff alleges an alternative claim, seeking to have a contract implied in law pursuant to which the defendant will refund the

down payment to plaintiff.[2] The Booe case is dispositive. The Court must take all allegations of the Complaint as true and liberally construe them. Despite the allegations asserting that the plaintiff has conferred a benefit upon the defendant, that the benefit was not conferred officiously, that the benefit was not conferred gratuitously, and that the benefit was measurable, as a factual matter, the plaintiff has reliably averred that these facts occurred in the context of a written, enforceable contract. The plaintiff's rights rise and fall with this contract. Accordingly, the motion to dismiss the unjust enrichment claim must be granted.

CONCLUSION

**THEREFORE, IT IS HEREBY ORDERED THAT** the Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**, consistent with the discussion above.

Signed: September 29, 2006

Robert J. Conrad, Jr.
Chief United States District Judge

---

[2] Clearly, the plaintiff is entitled to plead alternate theories of relief under Rule 8(a) of the Federal Rules of Civil Procedure. However, the claim for relief based upon unjust enrichment incorporates all factual allegations in the Complaint, including the facts about the written contract. These facts bring the claim within the holding in Booe, and show that no claim can be proved on this theory of relief.